UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JUSTIN WEHLING,

      Plaintiff,

  v.                                          16-cv-00746-LJV-JJM
                                                DECISION & ORDER

THE VILLAGE OF MEDINA, P.O.
JOSEPH FRENTZ, P.O. EDWIN
BOWER, SGT. MICHAEL BORRELL, and
JOHN/JANE DOES 1-10 (*Names being
fictitious and presently unknown*),

      Defendants.

---

On September 16, 2016, the plaintiff, Justin Wehling, commenced this action under 42 U.S.C. § 1983. Docket Item 1. On December 26, 2016, the case was referred to United States Magistrate Judge Jeremiah J. McCarthy for all proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B). Docket Item 10. On May 2, 2019, the Village of Medina ("Medina"), police officer Joseph Frentz, police officer Edwin Bower, and Sergeant Michael Borrell (collectively, "the defendants") moved for summary judgment, Docket Item 49; on May 24, 2019, the plaintiff responded, Docket Item 51; and on May 30, 2019, the defendants replied, Docket Item 53. On January 28, 2020, Judge McCarthy issued a Report and Recommendation ("R&R") finding that the defendants' motion should be granted in part and denied in part. Docket Item 57.

On February 18, 2020, the defendants objected to the R&R on that grounds that Judge McCarthy erred in (1) recommending dismissal of only portions of Wehling's excessive force claim; (2) finding that Wehling's assault and battery claim was not

duplicative of his excessive force claim; and (3) finding that triable issues of fact remained as to whether defendant Frentz had probable cause to arrest Wehling, Docket Item 59; on April 7, 2020, Wehling responded to the objections, Docket Item 66; and on April 13, 2020, the defendants replied, Docket Item 67.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objection, response, and reply; and the materials submitted to Judge McCarthy. Based on that *de novo* review, the Court accepts and adopts Judge McCarthy's recommendation to grant the defendants' motion in part.

## **DISCUSSION**

The Court assumes the reader's familiarity with Judge McCarthy's analysis in the R&R. *See* Docket Item 57.

I.  **COUNTS III, IV, V, IX, X, XI[1]**

Judge McCarthy recommended dismissing Wehling's claims for malicious abuse of process (count III), malicious prosecution (count IV), and failure to intervene (count V) because Wehling had withdrawn those claims. *See* Docket Item 57 at 8-9 (citing

---

[1] The complaint uses roman numerals to delineate each cause of action. The Court follows that system here.

Docket Item 51-1 at 3-4).  The Court adopts that recommendation and dismisses counts III, IV, and V.

Judge McCarthy also recommended dismissing Wehling's claims for intentional infliction of emotional distress (count IX), negligent infliction of emotional distress (count X), and negligence and gross negligence (count XI) because Wehling agreed to withdraw those claims if his claims for excessive force and/or false arrest were permitted to proceed.  *Id.* at 9, 20 n.8 (citing Docket Item 51-1 at 4).  Because, as discussed below, the Court agrees with Judge McCarthy's recommendation that the latter claims proceed, it also agrees with his recommendation to dismiss counts IX, X, and XI.  Therefore, those counts are dismissed as well.

## II.   COUNT VI

Judge McCarthy recommended dismissing Wehling's *Monell* claims against Medina.  *See id.* at 20-23.  Because Wehling does not object to that recommendation, and because the Court otherwise agrees that Wehling has not raised triable issues of fact as to whether Medina is liable for failure to train its officers, the Court adopts Judge McCarthy's recommendation.  Wehling's sixth claim is dismissed.

## III.  COUNT XIII

Judge McCarthy recommended dismissing Wehling's thirteenth claim, brought under state law, for negligent screening, hiring, supervision, and retention.  *See id.* at 23-25.  Because Wehling does not object to that recommendation, and because this Court otherwise agrees that there is no triable issue of fact as to whether defendant Frentz was acting within the scope of his employment at all times relevant to Wehling's

claims, the Court adopts Judge McCarthy's recommendation. Wehling's thirteenth claim is dismissed.

## IV.    COUNT XII

Judge McCarthy did not explicitly address whether the Court should dismiss Wehling's twelfth claim, brought under state law, for negligent training. But he generally recommended "that [the] defendants' motion for summary judgment be denied to the extent it seeks dismissal of [Wehling's] excessive force, assault and battery, and false arrest and imprisonment claims against [defendant] Frentz, [and] otherwise granted." *Id.* at 24. Judge McCarthy also found, in his discussion of Wehling's *Monell* claim, that Wehling "fail[ed] to identify any specific deficiency in [defendant] Frentz's training that was the proximate cause of this incident." *Id.* at 22. What is more, Wehling grouped his twelfth and thirteenth claims together in his papers opposing summary judgment, and he has not objected to any portion of the R&R. *See* Docket Item 51-1 at 4. The Court accordingly finds that Wehling has not raised any triable issue of fact as to whether Medina negligently trained its employees and dismisses Wehling's twelfth claim.

## V.    COUNTS II, VIII

Judge McCarthy recommended denying summary judgment on Wehling's Fourth Amendment and state-law claims for false arrest against defendant Frentz but granting summary judgment on those claims as to all other defendants. *See* Docket Item 57 at 9, 13-17. The defendants object to that recommendation on the ground that the confinement was privileged. *See* Docket Item 59 at 10-16. The Court agrees with Judge McCarthy.

In recommending that Wehling's claim for false arrest proceed to trial, Judge McCarthy first found that Frentz confined Wehling when he initially ordered him to stop "at the outset of the encounter[ ] and then took hold of one of [his] arms in an attempt to pat him down," and, if not then, when he later drew his TASER. See Docket Item 57 at 13. Judge McCarthy then found that the factual dispute about whether Frentz's confinement of Wehling was privileged precluded summary judgment. In particular, Judge McCarthy found that "the triable issue of fact as to whether a bulge was observable in [Wehling's] pocket" gave rise to a related question of whether Frentz had reasonable suspicion to frisk Wehling in the first instance—before Wehling fled and before Frentz fired the TASER; if Frentz did not have such reasonable suspicion, (1) Frentz's decision to grab Wehling's arm to frisk him would not have been lawful, (2) Wehling would not have been obliged to submit to that frisk, and (3) "no charge of obstruction of governmental administration"—Frentz's asserted basis for probable cause justifying the ensuing TASER-related confinement—"w[ould] lie." Id. at 15, 17 (second quoting United States v. Olavarria, No. 09 Cr. 870(PGG), 2011 WL 1529190, *7 (S.D.N.Y. Apr. 20, 2011) (collecting cases)). Stated differently, if a jury were to determine that no bulge was observable, that finding would render two distinct confinements unlawful—the initial Terry frisk (arm grab) and the subsequent obstruction arrest (TASER firing), as the latter was justified only by resistance to the former.

The defendants object on the grounds that Frentz did, in fact, have probable cause to arrest Wehling. See Docket Item 59 at 10-16. But they do not raise any specific objection to Judge McCarthy's recommendation, instead rehashing the arguments raised in their original brief. None of those are availing.

Significantly, the defendants do not present any reasoned argument why Judge McCarthy erred in finding that Wehling's confinement began when Frentz first ordered Wehling to stop, or, at the latest, when Frentz drew his TASER. Instead, the defendants focus on the post-TASER events, perhaps implicitly conceding the issue: If Frentz did not use the TASER to restrict Wehling's movement, why else did he use it? *Cf. Jackson v. Johnson*, 797 F. Supp. 2d 1057, 1066 (D. Mont. 2011) ("[T]the *Terry* stop in this case became an arrest when [the officer] drew his taser and pointed it at [the plaintiff] after [the plaintiff] failed to immediately comply with [the officer's] first command that [the plaintiff] drop to his knees."); *see also United States v. Weaver*, No. 18-1697, 2020 WL 5523210, at *5 (2d Cir. Sept. 15, 2020) ("[B]ecause 'a stop must be justified at its inception, [courts] consider only the facts known to [the officer] that prompted him to give [the order]' that would have caused a reasonable person in the suspect's position to believe 'that he was not free to leave.'" (quoting *Dancy v. McGinley*, 843 F.3d 93, 108-09) (second alteration in original)).

In any event, the Court agrees with Judge McCarthy's analysis. If the initial frisk was not privileged—an issue that turns on disputed facts[2]—then Frentz lacked probable

---

[2] The defendants also do not address the pertinent inquiry with respect to the initial frisk: Whether Frentz had "an 'articulable and objectively reasonable belief' that [Wehling] was 'armed and presently dangerous to [Frentz] or [Ashley].'" *See Weaver*, 2020 WL 5523210, at *1 (first quoting *Michigan v. Long*, 463 U.S. 1032, 1051 (1983)) (second quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Instead, the defendants simply assert that Frentz observed a bulge in Wehling's pocket. *See* Docket Item 59 at 7-8. But even if Frentz did observe a bulge in Wehling's pocket—an assertion Wehling disputes—that observation still might not have given rise to an objectively reasonable belief that Wehling was "armed and presently dangerous." The Second Circuit recently cautioned that because "a frisk 'is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment,' . . . [it] 'is not to be undertaken lightly.'" *Weaver*, 2020 WL 5523210, at *5 (quoting *Terry*, 392 U.S. at 17). Especially in light of that admonition, there is a real and discrete question of fact as to

6

cause to subdue Wehling, rendering his use of the TASER unlawful. *See also Williams v. City of Mount Vernon*, 428 F.Supp.2d 146, 156-57 (S.D.N.Y.2006) (finding that the defendant officers were not entitled to qualified immunity on false arrest claim because they lacked probable cause to arrest the plaintiff for obstructing governmental administration; the initial stop was not supported by reasonable suspicion and "a conviction for obstructing governmental administration cannot stand unless it is established that the police officers were engaged in lawful conduct"). Under this analysis, Wehling would not be a criminal suspect—that is, an individual whom an officer has probable cause to arrest for criminal activity—and so the defendants' argument that a police officer may use a TASER to subdue a fleeing *suspect* misses the mark entirely.

In short, the Court agrees with Judge McCarthy that there are triable issues of fact as to whether Frentz's frisk and confinement of Wehling were privileged. Accordingly, the Court denies Frentz's motion for summary judgment on Wehling's constitutional and state-law claims for false arrest but grants summary judgment on those claims as to all other defendants.

---

whether Frentz's having heard yelling and a witness's report of Wehling pushing someone (presumably his girlfriend) sufficed to turn the bulge into a reasonable belief of dangerousness (specifically, a knife). *See Jones v. Treubig*, 963 F.3d 214, 231 (2d Cir. 2020) (explaining that when an officer raises the defense of qualified immunity, "disputed material issues regarding the reasonableness of an officer's perception of the facts (whether mistaken or not) is the province of the jury, while the reasonableness of an officer's view of the law is decided by the district court" (citation omitted)). What is more, a jury might find that Frentz's testimony that "[a] weapons pat-down is something that . . . I do with *almost every single suspect* that I'm interviewing especially when it comes to *potential domestic violence situations*," Docket Item 49-22 at 19 (emphasis added), undermines his claim that he held "an 'articulable and objectively reasonable belief' that [*Wehling*] was 'armed and *presently dangerous*,'" *see Weaver*, 2020 WL 5523210, at *1 (emphases added).

## VI.   COUNT I, VII

Judge McCarthy recommended denying summary judgment on Wehling's Fourth Amendment and state-law claims for excessive force against defendant Frentz but granting summary judgment on those claims as to all other defendants.  *See* Docket Item 57 at 9, 17-20.  The defendants object on the grounds that Judge McCarthy made what amounts to a typographical error in reaching this conclusion and also erred in failing to address the defendants' expert report.  Docket Item 59 at 6.  The Court again agrees with Judge McCarthy.

In recommending that Wehling's excessive force claims against Frentz proceed to trial, Judge McCarthy divided the relevant events into two time periods:  pre-TASER and post-TASER.  *See* Docket Item 57 at 18-19, 20.  Judge McCarthy recommended that Wehling's claims proceed only to the extent they related to the first period.  *Id.*  Pre-TASER, Judge McCarthy explained, "there is a triable issue of fact as to whether [defendant] Frentz falsely arrested [Wehling]," and, if the arrest was not justified, Frentz's use of the TASER would "constitute[ ] a use of force where none was necessary, and no reasonable officer could have concluded otherwise."  *Id.* (second quoting *Jackson*, 797 F. Supp. 2d at 1072). The same is not true with respect to any events that transpired post-TASER, however, because "while [Wehling] appears to have sustained serious injuries, there is nothing in the record to establish that [the injuries] were attributable to anything other than the fall to the ground and the seizure [Wehling] sustained" from the TASER.  *Id.* at 20.

The defendants argue that Judge McCarthy "erred in his 'Conclusion' denying dismissal of [Wehling's] excessive force claim as the portion of the [R&R] discussing 'Use of Force'[ ] recommended that the portion of defendants' motion seeking a

dismissal of the excessive force claims be granted." Docket Item 59 at 6. The defendants reason that because Judge McCarthy "ruled that 'there is nothing in the record to indicate excessive force was used,'" and because Judge McCarthy "clearly stated that [he] did 'recommend that this portion of the motion be granted,' . . . to hold that the excessive force claim would remain appears to be in clear contradiction of the [R&R] findings, and appears to have been written in error." *Id.* (quoting Docket Item 57 at 20).

The Court is disappointed by counsel's reading of the R&R, which is at best extremely careless and at worst disingenuous. Judge McCarthy bisected the events in the complaint into two segments: pre-TASER ("The Use of the Taser") and post-TASER ("Use of force after Plaintiff was Subdued"). *See* Docket Item 57 at 18-19, 20. As explained above, he found that the pre-TASER events could proceed but that any claims related to the post-TASER events could not. In reaching that finding, Judge McCarthy explained that "while [Wehling] appear[ed] to have sustained serious injuries, there [was] nothing in the record to establish that [the injuries] were attributable to anything *other than the fall to the ground and the seizure* [Wehling] sustained" from the TASER. *Id.* at 20 (emphasis added). And earlier in the R&R, Judge McCarthy noted that Wehling had "sustained a left clavicle fracture, bleeding in the left eye, and a T5-T7 mild compression fracture." *Id.* at 7.

Counsel ignores these findings as well as the structure of the R&R. For example, she asserts that Judge McCarthy's "recommend[ation] that this portion of the motion be granted" applied to the entire excessive force claim. Docket Item 69 at 6 (quoting Docket Item 57 at 20). But that statement was made under the subheading

9

"Use of force *after Plaintiff was Subdued*," Docket Item 57 at 20 (emphasis added); and only one page earlier, Judge McCarthy had written, under the subheading "The Use of the Taser": "I recommend that this portion of [Frentz's] motion be denied." Docket Item 57 at 19. Judge McCarthy's recommendation to grant "this portion" of the motion therefore plainly applied only to the post-TASER events.

What is more, counsel's excerpts from the R&R ignore the context of—and the very words in—the sentences in which those words were written. Counsel quotes the R&R as finding that "there is nothing in the record to indicate excessive force was used," Docket Item 59 at 6 (quoting Docket Item 57 at 20), but the full sentence from which that excerpt is taken stated: "Even if [Wehling] was placed in handcuffs after he was subdued, there is nothing in the record to indicate excessive force was used *to do so.*" Docket Item 57 at 20 (emphasis added) (citation omitted). Counsel's omission of parts of the sentence is—in a word—misleading. It is one thing to make the strongest arguments for a client that the record permits; it is quite another to distort that record. Because this Court has never witnessed any other such unscrupulousness by counsel, it will assume this was a misjudgment, perhaps caused by zealousness that simply crossed the line. Were such conduct to recur, however, the Court would not treat it so benignly.

The defendants also argue that Judge McCarthy erred in failing to address his expert report and "referenc[ing] the report of [Wehling's] purported expert." *See* Docket Item 59 at 6. This argument, construed generously, misunderstands Judge McCarthy's basis for recommending denial of the defendants' motion. Judge McCarthy found that because there remained factual disputes around whether "[defendant] Frentz falsely

10

arrested [Wehling]," there necessarily remained factual disputes as to whether Frentz was entitled to qualified immunity.  Docket Item 57 at 19.  As Judge McCarthy explained, if the arrest was not justified, Frentz's use of the TASER would "constitute[ ] a use of force where none was necessary, and no reasonable officer could have concluded otherwise."  *Id.* (quoting *Jackson*, 797 F. Supp. 2d at1072).  So whether Frentz was permitted to use "a non-lethal tool to assist . . . with stopping a suspect from fleeing," *see* Docket Item 59 at 7—in either the experts' or Judge McCarthy's views—is not the issue.  The issue is whether Frentz was permitted to stop Wehling *at all*.  *See also Jackson*, 797 F. Supp. 2d at 1071 ("Where there is no need for force, *any* force used is constitutionally unreasonable." (alteration in original) (citation omitted)).  Because the defendants do not address this finding, and because the Court otherwise agrees with it, the Court adopts Judge McCarthy's recommendation to deny summary judgment on Wehling's Fourth Amendment claim for excessive force against defendant Frentz but to grant summary judgment on that claim as to all other defendants.

Finally, the defendants argue that the state-law assault and battery claim (count VII) is duplicative of the constitutional excessive force claim (count I).  Docket Item 59 at 9-10.  That argument is unavailing, as the defendants cite inapposite cases.  *Cf. Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015) (dismissing *section 1983* assault claim because it was "duplicative" of the plaintiff's separate *section 1983* excessive force claim).  Accordingly, and for the reasons stated in Judge McCarthy's R&R, the defendants' motion for summary judgment on Wehling's claim for assault and battery is denied as to defendant Frentz but granted as to all other defendants.

11

## **CONCLUSION**

For the reasons stated above and in the R&R, the defendants' motion for summary judgment, Docket Item 49, is GRANTED in part and DENIED in part. The plaintiff's third, fourth, fifth, sixth, ninth, tenth, eleventh, twelfth, and thirteenth claims are dismissed in their entirety; the plaintiff's first, second, seventh, and eighth claims are dismissed as against all defendants except Frentz; and the Clerk of Court shall terminate defendants Medina, Bower, Borrell, and John/Jane Does 1-10 as parties to this action. **The parties shall contact the Court within 30 days of the date of this order to schedule a status conference and set a trial date.**

SO ORDERED.

Dated:   September 21, 2020
         Buffalo, New York

                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE